Sherika STACY, on behalf of herself and all similarly-situated individuals, Plaintiff,

v.

DOLLAR TREE STORES, INC., Defendant.

CASE NO. 16–61032–CIV–ZLOCH

United States District Court, S.D. Florida.

Entered 08/14/2017

Signed 08/11/2017

Brandon J. Hill, Luis A. Cabassa, Wenzel Fenton Cabassa, P.A., Marc Reed Edelman, Morgan & Morgan, P.A., Tampa, FL, Craig Carley Marchiando, Pro Hac Vice, Leonard A. Bennett, Pro Hac Vice, Consumer Litigation Associates, P.C., Newport News, VA, for Plaintiff.

Barry Rodney Davidson, Douglas C Dreier, Hunton & Williams LLP, Miami, FL, Lewis F. Powell, III, Pro Hac Vice, Hunton & Williams, LLP, Richmond, VA, Robert T. Quackenboss, Pro Hac Vice, Hunton & Williams, Atlanta, GA, Cullan Edmiston Dertie Jones, Hunton and Williams LLP, Washington, DC, for Defendant.

## ORDER

WILLIAM J. ZLOCH, Sr. United States District Judge

THIS MATTER is before the Court upon Defendant Dollar Tree Stores, Inc.'s Motion To Sever And Remand Counts II And III Of The First Amended Complaint Pursuant To 28 U.S.C. § 1441 (DE 50). The Court has carefully reviewed said Motion, the entire court file and is otherwise fully advised in the premises.

When Plaintiff Sherika Stacy ("Stacy") applied for a promotion with Defendant Dollar Tree Stores, Inc. ("Dollar Tree"), she completed a form authorizing a background check. That form contained the disclosure mandated by the Fair Credit Reporting Act ("FCRA"). Despite the FCRA's requirement that this disclosure be in a stand-alone document, 15 U.S.C. § 1681b(b)(2)(A)(I), the form also contained information to assist Stacy in understanding her rights and the scope of the background check. Stacy understood she was authorizing a background check when she completed the form, but has nevertheless sued Dollar Tree for providing more information than the FCRA requires. The Court must now decide whether she suffered a concrete injury or instead whether she merely trifles with a "bare procedural violation" of the statute. Spokeo, Inc. v. Robins, — U.S. —, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016).

## I. Background

### A. The Statutory Backdrop

The FCRA regulates the creation and use of "consumer reports"—reports containing information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living," that are used for, among other things, "employment purposes." 15 U.S.C. § 1681a(d)(1) (hereinafter, "consumer report" or "background check"). A "consumer" is simply an individual. 15 U.S.C. § 1681a(c). "Employment purposes" include "evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(d)(1).

As pertinent here, the FCRA prohibits the procurement of a consumer report for employment purposes, unless: (1) "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured ... that a consumer report may be obtained for employment purposes" and (2) "the consumer has authorized in writing ... the procurement of the report. ..." 15 U.S.C. § 1681b(b)(2)(A). The FCRA mandates that this disclosure be "in a document that consists solely of

the disclosure." Id. (hereinafter, the "stand-alone document requirement").

### B. Stacy's Employment at Dollar Tree

Dollar Tree owns and operates a chain of discount variety stores across the country. From 2013 to 2015, Stacy worked as a sales associate at a Dollar Tree store in Tallahassee, Florida. Because Dollar Tree does not conduct background checks on applicants for sales associate positions, Dollar Tree did not conduct a background check on Stacy before she was hired. Dollar Tree does, however, conduct background checks on applicants for assistant store manager. So, when Stacy applied for a promotion to that position, Dollar Tree sent her an email notifying her of its intent to conduct a background check.

In that email, Dollar Tree provided a link to a five-page disclosure and authorization form, titled "Consent To Request Consumer Report & Investigative Consumer Report Information" ("the Form"). The Form advised Stacy that Dollar Tree would use a company called Sterling InfoSystems, Inc., to conduct the background check. In substantial part, the Form reads:

> I understand that [Dollar Tree Management, Inc. and it's [sic] affiliated companies]('COMPANY') will use Sterling InfoSystems Inc., 249 West 17th Street, New York, NY 10011, (877) 424–2457 to obtain a consumer report ("Report") as part of the hiring process. I also understand that if hired, to the extent permitted by law, COMPANY may obtain further Reports from STERLING so as to update, renew or extend my employment.
>
> I understand Sterling InfoSystems Inc.'s ("STERLING") investigation may include obtaining information regarding my credit background, bankruptcies, lawsuits, judgments, paid tax liens, unlawful detainer actions, failure to pay spousal support or child support, accounts place for collection, character,

general reputation, personal characteristics and standard of living, driving record and criminal record, subject to any limitations imposed by applicable federal and state law. I understand such information may be obtained through direct or indirect contact with former employers, schools, financial institutions, landlords, and public agencies or other persons who may have such knowledge.

> The nature and scope of the investigation sought is indicated by the selected services below: [including criminal background check, Social Security number trace, and motor vehicle report]
>
> I acknowledge receipt of the attached summary of my rights under the Fair Credit Reporting Act and, as required by law, any related state summary of rights (collectively "Summaries of Rights").
>
> This consent will not affect my ability to question or dispute the accuracy of any information contained in a Report. I understand if COMPANY makes a conditional decision to disqualify me based all or in part on my Report, I will be provided with a copy of the Report and another copy of the Summaries of Rights, and if I disagree with the accuracy of the purported disqualifying information in the Report, I must notify COMPANY within five business days of my receipt of the Report that I am challenging the accuracy of such information with STERLING.
>
> I hereby consent to this investigation and authorize COMPANY to procure a report on my background.
>
> In order to verify my identity for purposes of Report preparation, I am voluntarily releasing my date of birth, social security number and the other information and fully understand that all employment decisions are based on legitimate non-discriminatory reasons.

The name, address, and telephone number of the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report is: [Sterling]

DE 50–1. On the first and second pages of the Form, there are also notices about consumers' rights under various state laws. The second and third pages of the Form contain lines for the applicant's signature and space where applicants provide information necessary to conduct the background check. And the fourth and fifth pages of the Form contain information about consumers' rights under the FCRA and contact information for federal agencies tasked with handling consumer protection matters.

Stacy completed, signed, and returned the Form. When a Dollar Tree manager later reviewed Stacy's background check, he erroneously interpreted it as suggesting Stacy had lied about her criminal record on her application. Dollar Tree then terminated Stacy's employment.

Stacy filed suit in state court, asserting three claims under the FCRA. The two germane here—Counts II and III—assert that the Form violated the FCRA's standalone document requirement and, as a result, that Dollar Tree never received effective consent to run a background check. Dollar Tree removed the case to this Court, believing the case was within this Court's original jurisdiction.

After Dollar Tree removed the case, two pertinent events occurred. On May 16, 2016, the Supreme Court issued its opinion in Spokeo v. Robins, 136 S.Ct. 1540. And on January 31, 2017, Dollar Tree deposed Stacy. During the deposition, Stacy testified that she received the Form after she applied for a promotion, that she completed it, and that in so doing she understood she was authorizing Dollar Tree to conduct a background check. DE 50–2. The Parties agree on this much.

But they disagree on the legal import of these undisputed facts. Dollar Tree now moves the Court to sever Counts II and III and remand them state court because, in its view, Stacy has conceded that she lacks standing to prosecute those claims in federal court. Stacy maintains that the whole case must remain here because, in her view, violation of the FCRA's standalone document requirement is alone sufficient to inflict a concrete injury in fact.

## II. Standard of Review

■ Dollar Tree's Motion (DE 50) asserts that the Court lacks subject matter jurisdiction over Counts II and III of the First Amended Complaint (DE 17) because Stacy lacks Article III standing. Attacks on subject matter jurisdiction, including the plaintiff's standing, come in two forms: "facial attacks" and "factual attacks." Lawrence v. Dunbar, 919 F.2d 1525, 1528–29 (11th Cir. 1990). A facial attack challenges only the pleadings. Id. But a factual attack "challenges the existence of subject matter jurisdiction using materials extrinsic from the pleadings, such as affidavits or testimony." Stalley ex rel. United States v. Orlando Regional Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008). Because Dollar Tree relies on materials outside the pleadings—namely, the transcript of Stacy's deposition—it raises a factual attack on the Court's subject matter jurisdiction. But because the facts pertinent to the instant Motion (DE 50) are undisputed, the Court need not hold an evidentiary hearing to dispose of the Motion. See Bischoff v. Osceola Cnty., Fla., 222 F.3d 874, 881 (11th Cir. 2000) ("in cases where the evidence relating to standing is squarely in contradiction as to central matters and requires credibility findings, a district court cannot make those findings simply by relying on the paper record but must conduct a hearing at which it may evaluate the live testi-

mony of the witnesses."). Instead, it relies on the Parties' paper submissions.

### III. Analysis

 "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Article III of the Constitution vests federal courts with "[t]he judicial Power of the United States," but permits them to exercise their jurisdiction only over certain "Cases" and "Controversies." U.S. Const. Art. III. The Supreme Court has consistently maintained that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). One of the fundamental precepts of this case or controversy requirement is the doctrine of standing. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). To establish standing to proceed in federal court, the plaintiff must demonstrate an "injury in fact," "a causal connection between the injury and the conduct complained of," and "that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

 To satisfy Article III's injury-in-fact requirement, the injury complained of must be both "concrete and particularized." Spokeo, 136 S.Ct. at 1545 (emphasis supplied). A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." Id. at 1548. "A 'concrete' injury must be 'de facto'; that is, it must actually exist." Id. But that does not mean that the harm complained of must be tangible. In appropriate cases, intangible harms may be concrete injuries for purposes of Article III.

 As Spokeo instructs, "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." Id. at 1549. Of course, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Raines, 521 U.S. at 820 n.3, 117 S.Ct. 2312. But "Congress is well positioned to identify intangible harms that meet minimum Article III requirements, [so] its judgment is also instructive and important." Spokeo, 136 S.Ct. at 1549. Thus, "the violation of a procedural right granted by statute can be sufficient in some instances to constitute injury in fact." Id. (emphasis added). In others, though, "a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III." Id. The key is to discern "whether the particular procedural violations ... entail a degree of risk sufficient to meet the concreteness requirement." Id. at 1550. Put differently, the question is whether non-compliance with the statutory procedure itself caused harm (or a material risk of harm) to a substantive interest the statute protects.

### A. Stacy Did Not Suffer
### A Concrete Injury

Stacy contends she suffered two concrete injuries flowing from Dollar Tree's background-check authorization form: an informational injury and an invasion of her privacy. While it is true that the FCRA's stand-alone document requirement serves both an informational and privacy interest, violation of that requirement does not automatically harm those interests. And Stacy's testimony confirms that neither of the

harms she relies on came to bear. As a result, her claims assert only a "bare procedural violation" of the FCRA and are thus not cognizable in federal court.

1. Violation Of The Stand–Alone Document Requirement Does Not Automatically Give Rise To A Concrete Injury

Through the FCRA, Congress generally sought to ensure "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). The FCRA's stand-alone document requirement serves a much narrower goal within that larger purpose. It seeks to ensure that current or prospective employees give knowing consent to the procurement of a consumer report before the report is generated and used in the context of their employment. This substantive goal serves interrelated informational and privacy interests: first, that the employer's intent to compile a consumer report is clearly conveyed to the intended subject of the report. And second, knowing that intent, that the subject of the report agrees to the compilation her private information.

But as one court accurately put it: "The means chosen to implement that goal ... are purely formal." In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litigation, Case No. 15-2547, 2017 WL 354023, *6 (D. N.J. Jan. 24, 2017). While Congress chose to require the pertinent FCRA disclosure be in a stand-alone document, it could just as easily have required a particular font, color, type size, or any other distinctive feature. One is no less a matter of form than another, and each is capable of rendering a given disclosure "clear and conspicuous." 15 U.S.C. § 1681b(b)(2)(i); see Landrum v. Blackbird Enters., LLC, 214 F.Supp.3d 566, 571–72 (S.D. Tex. 2016).

More fundamentally, non-compliance with the FCRA's formatting requirement does not automatically impinge the interests served by the stand-alone document requirement. Take, for example, a disclosure that appears in large red font and occupies half of a page, with extraneous information appearing on the other half in small black font. It is difficult to imagine how such a non-compliant disclosure could harm the informational interest served by the stand-alone document requirement. But it is not difficult to imagine a disclosure placed on a lone document that fails to convey clearly the information required—say, one in illegible font or phrased near gibberish. In the latter case, the appropriate procedural mechanism has been employed, but without meeting the FCRA's substantive goal. In the former, the procedure is wrong but the requisite information is still conveyed. Simply put, the means and ends are not "perfectly correlated," so there are some cases in which technical violations of the stand-alone document requirement will not cause any informational injury. In re Michaels, 2017 WL 354023, at *6. As a result, "whether the violation has caused such harm is situation-dependent." Id.

 This means-ends disconnect also carries over to the privacy interest served by the FCRA's stand-alone document requirement. In this context, a person's interest in privacy "encompass[es] the individual's control of information concerning his or her person." United States Dep't of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). So, there is little doubt that an employer's failure to obtain an employee's consent to procure a consumer report at all would give rise to a concrete invasion of her privacy. See In re Michaels, 2017 WL 354023 at *10; see also 15 U.S.C. § 1681b(b)(2)(A)(ii). "On the other hand, the [employee's] consent, after being informed that the employer would be seeking such a report, vitiates any claim of

a privacy violation." Id. at *10. Whether non-compliance with the stand-alone document requirement caused a privacy injury to a consenting employee thus hinges on the existence of a concrete informational injury—for the consumer report in that situation is only unauthorized if the consumer did not knowingly consent. To hold otherwise "would raise every technical violation of [the FCRA] to the realm of a major substantive harm." Shoots v. iQor Holdings US Inc., Case No. 15-563, 2016 WL 6090723, at *4 (D. Minn. Oct. 18, 2016); see also In re Michaels, 2017 WL 354023, at *11 (there is no "substantive right to be free of every procedural violation").

■ The Court thus concludes that violation of the FCRA's stand-alone document requirement does not automatically cause a concrete injury for purposes of Article III standing. In doing so, the Court joins the vast majority of other courts that have so held. E.g., Groshek v. Time Warner Cable, Inc., Case No. 16-3355, 865 F.3d 884, 2017 WL 3260080 (7th Cir. Aug. 1, 2017); Bercut v. Michaels Stores, Inc., Case No. 17-01830, 2017 WL 2807515 (N.D. Cal. Jun. 29, 2017); Dyson v. Sky Chefs, Inc., Case No. 16-3155, 2017 WL 2618946, at *3–8 (N.D. Tex. Jun. 17, 2017); Campbell v. Adecco USA, Inc., Case No. 16-04059, 2017 WL 1476152, at *4 (W.D. Mo. Apr. 24, 2017); LaFollette v. RoBal, Inc., Case No. 16-2592, 2017 WL 1174020, at *4–5 (N.D. Ga. Mar. 30, 2017); Vera v. Mondelez Global LLC, Case No. 16-8192, 2017 WL 1036509, at *2–3 (N.D. Ill. Mar. 17, 2017); Fields v. Beverly Health and Rehab. Servs., Inc., Case No. 16-527, 2017 WL 812104, at *4–6 (D. Minn. Mar. 1, 2017); LeGrand v. IntelliCorp Records, Inc., Case No. 15-2091, 2017 WL 733664, at *3 (N.D. Oh. Feb. 24, 2017); In re Michaels Stores, 2017 WL 354023; Landrum, 214 F.Supp.3d at 571–72; but see See Thomas v. FTS USA, LLC, 193 F.Supp.3d 623 (E.D. Va. 2016). Because a "bare procedural violation" of the stand-alone document requirement will not sustain the Court's jurisdiction over Counts II and III, the Court must now consider whether the evidence of record will.

2. The Record Does Not Otherwise Support A Concrete Injury.

■ When Stacy applied for a promotion with Dollar Tree she received the Form, notifying her that Dollar Tree intended to obtain a background check on her. See DE 50-1. She completed that Form and understood she was consenting to Dollar Tree procuring a background check. See DE 50-2. These undisputed facts confirm that she has not suffered a concrete informational injury or invasion of privacy.

■ "An 'informational injury' is a type of intangible injury that can constitute an Article III injury in fact." Dreher v. Experian Information Solutions, Inc., 856 F.3d 337, 345 (4th Cir. 2017) (citing Federal Election Comm'n v. Akins, 524 U.S. 11, 24, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) and Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 449, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989)). Although the Eleventh Circuit has not definitively set out a standard for what constitutes a concrete informational injury, its decisions hold close to the Fourth Circuit's summation in Dreher: "a constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled and that the denial of that information creates a 'real' harm with an adverse effect." Id. (emphasis supplied).

For example, in Church v. Accretive Health, Inc., the defendant sent the plaintiff a debt collection letter, which failed to include certain disclosures mandated by the Fair Debt Collection Practices Act. 654 Fed.Appx. 990, 994–95 (11th Cir. 2016). The Eleventh Circuit held that the plaintiff

had alleged a concrete injury for purposes of Article III because she "did not receive information to which she alleges she was entitled." Id. By contrast, in Nicklaw v. CitiMortgage, Inc., the defendant failed to file a certificate noting satisfaction of a mortgage within the time prescribed by state law, but eventually did. 839 F.3d 998, 1000–01 (11th Cir. 2016). The Eleventh Circuit observed that "a plaintiff who alleges a violation of a statutory right to receive information alleges a concreted injury," but ultimately concluded that the plaintiff lacked standing to sue for the violation of that state law. According to the Eleventh Circuit, that was because the plaintiff failed to allege any real harm: "His complaint does not allege that he lost money," "that his credit suffered," or that "he or anyone else was aware that the certificate of discharge had not been recorded during the relevant time period." Id. at 1003. And in Meeks v. Ocwen Loan Servicing, LLC, the plaintiff mailed a request for information to his mortgage servicer, but did not receive a written response acknowledging receipt as required by the Real Estate Settlement Procedures Act's implementing regulations. Case No. 16-15536, 681 Fed.Appx. 791, 791–92 (11th Cir. 2017). But because the plaintiff had mailed the request via certified mail, and an agent of the mortgage servicer signed a certified mail receipt, all parties agreed that the plaintiff had actual knowledge that the request for information had been received. Id. at 792–93. The Eleventh Circuit held that the plaintiff's actual knowledge of receipt deprived him of a concrete injury, even though he believed the defendant failed to comply with the regulation. Id. ("Meeks suffered at most 'a bare procedural violation,' and he cannot show that he suffered a real, concrete injury from Ocwen's actions.").

Stacy's case does not fit the informational injury mold. Unlike Church, she was not deprived of any information to which she was legally entitled. Quite the contrary: all Parties agree that Stacy actually received the FCRA-mandated disclosure. And because she testified that she understood the disclosure presented to her, Stacy cannot claim that the additional information included constructively denied her what the FCRA requires employers provide. Nor does any evidence of record suggest that Stacy would not have consented to a background check had the FCRA disclosure been presented to her in a stand-alone document. Thus, just as in Nicklaw and Meeks, Stacy cannot point to any real harm she suffered as a result of Dollar Tree's technical violation of the statute.

Absent a deprivation of statutorily required information or any real harm, Stacy cannot claim an informational injury. And as the Court has explained, when an employee consents to a background check, her claim of a privacy injury necessarily requires an underlying informational injury. Because Stacy has none, her knowing consent vitiates any claim of a privacy injury. Stacy thus cannot satisfy Article III's requirement of a concrete injury in fact. Her claims in Counts II and III of the First Amended Complaint (DE 17) present nothing more than a "bare procedural violation" of the FCRA and are not cognizable in federal court. Spokeo, 136 S.Ct. at 1549.

**B. Stacy's Counter–Arguments Fail**

 Stacy's arguments in opposition to remand of Counts II and III are unavailing. Stacy first argues that Dollar Tree's Motion (DE 50) is "untimely under 28 U.S.C. § 1447's 30–day deadline." DE 57, at 4. That line of argument is curious, as 28 U.S.C. § 1447's time limits for filing a motion to remand expressly exclude motions premised on lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than subject matter juris-

diction must be made within 30 days after the filing of the notice of removal"). Indeed, Stacy's suggestion that the instant Motion (DE 50) is untimely—or that Dollar Tree waived the issue by removing the case—is flatly contrary to the well-established principles that subject matter jurisdiction cannot be waived by the parties and that it can be raised at any stage of the proceedings. E.g., Belleri v. U.S., 712 F.3d 543, 547 (11th Cir. 2013) ("parties cannot waive subject matter jurisdiction, and we may consider subject matter jurisdiction claims at any time during the litigation.").

In addition, Stacy bears the burden of sustaining this Court's subject matter jurisdiction throughout the case—a burden she must shoulder "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." Lujan, 504 U.S. at 561, 112 S.Ct. 2130. So even if it appeared to Dollar Tree that Stacy's initial pleading stated a concrete injury in fact, her failure to support that injury with any evidence would entitle Dollar Tree to challenge the Court's subject matter jurisdiction after removal. Moreover, no Party disputes that this Court has subject matter jurisdiction over the claim in Count I of the First Amended Complaint (DE 17). And cases must be removed in their entirety, not in bits. For these reasons, Stacy's assertion that Dollar Tree is engaging in "gamesmanship" has no basis in fact. DE 57, at 6.[1]

Lastly, the cases on which Stacy relies to support her claim of injury are either inapposite or unpersuasive. Neither Syed v. M–I, LLC, 853 F.3d 492 (9th Cir. 2017) nor Moody v. Ascenda USA, Inc., Case No. 16-60364, 2016 WL 5900216 (S.D. Fla. Oct. 5, 2016), are factually similar to this case. In Syed, the Ninth Circuit found a concrete injury based on allegations suggesting "that Syed was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure." 853 F.3d at 499. And in Moody, a court in this district found a concrete injury based on allegations suggesting that the prospective employee did not receive an FCRA disclosure at all. 2016 WL 5900216, at *3–5. In other words, the allegations in Syed and Moody supported an informational injury and a privacy injury—neither of which are factually supported here.

The Court is not persuaded by the line of cases Stacy relies on from the Eastern District of Virginia, which hold that violation of the stand-alone document requirement is alone sufficient to confer Article III standing. See Thomas, 193 F.Supp.3d 623; Milbourne v. JRK Residential America, LLC, Case No. 12-861, 2016 WL 1071570 (E.D. Va. Mar. 15, 2016); Manuel v. Wells Fargo Bank, N.A., 123 F.Supp.3d 810 (E.D. Va. 2015); Ryals v. Strategic Screening Solutions, Inc., 117 F.Supp.3d 746 (E.D. Va. 2015). Three were decided before the Supreme Court issued its opinion in Spokeo. And all four are of doubtful validity after the Fourth Circuit's decision in Dreher, which clarifies the standard for claiming an informational injury in that circuit. Nor is the Court persuaded by the two cases from the Middle District of Florida on which Stacy relies. See Hargrett v. Amazon.com DEDC LLC, 235 F.Supp.3d 1320 (M.D. Fla. 2017); Graham v. Pyramid Healthcare Solutions, Inc., Case No. 16-1324, 2016 WL 6248309 (M.D. Fla. Oct. 16, 2016). Hargrett relies heavily on pre-Dre-

---

1. While the Court appreciates Stacy's concern that litigating Counts II and III in a separate forum from Count I may duplicate some judicial effort, subject matter jurisdiction cannot be "supplanted by concerns of convenience and efficiency." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000).

her cases from the Eastern District of Virginia, and Graham relies almost exclusively on Moody, which is distinguishable from this case.

### IV. Conclusion

Having concluded that Stacy lacks standing to proceed with her claims in Counts II and III of the First Amended Complaint (DE 17), there remains one point of procedure. For cases originating in federal court, the appropriate action is to dismiss the case or pertinent claims without prejudice if the plaintiff lacks standing. McGee v. Solicitor General of Richmond County, Ga., 727 F.3d 1322, 1326 (11th Cir. 2013). But for cases removed here, the claims over which the Court lacks jurisdiction must be severed from the claim over which the Court does have jurisdiction, with the severed claims being remanded to the state-court forum. See id.; 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded); 28 U.S.C. § 1441(c)(2) (requiring severance and remand of claims removed to federal court over which the court lacks jurisdiction).

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant Dollar Tree Stores, Inc.'s Motion To Sever And Remand Counts II And III Of The First Amended Complaint Pursuant To 28 U.S.C. § 1441 (DE 50) be and the same is hereby **GRANTED;**

2. Pursuant to 28 U.S.C. § 1441, Counts II and III of the First Amended Complaint (DE 17) are hereby severed from Count I;

3. Pursuant to 28 U.S.C. § 1441, Counts II and III of the First Amended Complaint (DE 17) are hereby **REMANDED** to state court; and

4. The Clerk of the United States District Court, Southern District of Florida, be and the same is hereby **DIRECTED** to forward a certified copy of this Order to the Clerk of the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, Case No. 16–0064328 (CA 20).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, 11th day of August, 2017.