Justice ALITOdelivered the opinion of the Court.
This case presents the question whether respondent Robins has standing to maintain an action in federal court against petitioner Spokeo under the Fair Credit Reporting Act of 1970 (FCRA or Act), 84 Stat. 1127, as amended, 15 U.S.C. § 1681 et seq.
Spokeo operates a "people search engine." If an individual visits Spokeo's Web site and inputs a person's name, a phone number, or an e-mail address, Spokeo conducts a computerized search in a wide variety of databases and provides information about the subject of the search. Spokeo performed such a search for information about Robins, and some of the information it gathered and then disseminated was incorrect. When Robins learned of these inaccuracies, he filed a complaint on his own behalf and on behalf of a class of similarly situated individuals.
The District Court dismissed Robins' complaint for lack of standing, but a panel of the Ninth Circuit reversed. The Ninth Circuit noted, first, that Robins had alleged that "Spokeo violated his statutory rights, not just the statutory rights of other people," and, second, that "Robins's personal interests in the handling of his credit information are individualized rather than collective." 742 F.3d 409, 413 (2014). Based on these two observations, the *1545 Ninth Circuit held that Robins had adequately alleged injury in fact, a requirement for standing under Article III of the Constitution. Id., at 413-414.
This analysis was incomplete. As we have explained in our prior opinions, the injury-in-fact requirement requires a plaintiff to allege an injury that is both "concrete and particularized." Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180-181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)(emphasis added). The Ninth Circuit's analysis focused on the second characteristic (particularity), but it overlooked the first (concreteness). We therefore vacate the decision below and remand for the Ninth Circuit to consider both aspects of the injury-in-fact requirement.
I
The FCRA seeks to ensure "fair and accurate credit reporting." § 1681(a)(1). To achieve this end, the Act regulates the creation and the use of "consumer report[s]"[1] by "consumer reporting agenc[ies]"[2] for certain specified purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment. See §§ 1681a(d)(1)(A)-(C); § 1681b. Enacted long before the advent of the Internet, the FCRA applies to companies that regularly disseminate information bearing on an individual's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." § 1681a(d)(1).
The FCRA imposes a host of requirements concerning the creation and use of consumer reports. As relevant here, the Act requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports, § 1681e(b); to notify providers and users of consumer information of their responsibilities under the Act, § 1681e(d); to limit the circumstances in which such agencies provide consumer reports "for employment purposes," § 1681b(b)(1); and to post toll-free numbers for consumers to request reports, § 1681j(a).
The Act also provides that "[a]ny person who willfully fails to comply with any requirement [of the Act] with respect to any [individual[3] ] is liable to that [individual]" for, among other things, either "actual damages" or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages. § 1681n(a).
*1546 Spokeo is alleged to qualify as a "consumer reporting agency" under the FCRA.[4] It operates a Web site that allows users to search for information about other individuals by name, e-mail address, or phone number. In response to an inquiry submitted online, Spokeo searches a wide spectrum of databases and gathers and provides information such as the individual's address, phone number, marital status, approximate age, occupation, hobbies, finances, shopping habits, and musical preferences. App. 7, 10-11. According to Robins, Spokeo markets its services to a variety of users, including not only "employers who want to evaluate prospective employees," but also "those who want to investigate prospective romantic partners or seek other personal information." Brief for Respondent 7. Persons wishing to perform a Spokeo search need not disclose their identities, and much information is available for free.
At some point in time, someone (Robins' complaint does not specify who) made a Spokeo search request for information about Robins, and Spokeo trawled its sources and generated a profile. By some means not detailed in Robins' complaint, he became aware of the contents of that profile and discovered that it contained inaccurate information. His profile, he asserts, states that he is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree. App. 14. According to Robins' complaint, all of this information is incorrect.
Robins filed a class-action complaint in the United States District Court for the Central District of California, claiming, among other things, that Spokeo willfully failed to comply with the FCRA requirements enumerated above.
The District Court initially denied Spokeo's motion to dismiss the complaint for lack of jurisdiction, but later reconsidered and dismissed the complaint with prejudice. App. to Pet. for Cert. 23a. The court found that Robins had not "properly pled" an injury in fact, as required by Article III. Ibid.
The Court of Appeals for the Ninth Circuit reversed. Relying on Circuit precedent,[5] the court began by stating that "the violation of a statutory right is usually a sufficient injury in fact to confer standing." 742 F.3d, at 412. The court recognized that "the Constitution limits the power of Congress to confer standing." Id., at 413. But the court held that those limits were honored in this case because Robins alleged that "Spokeo violated his statutory rights, not just the statutory rights of other people," and because his "personal interests in the handling of his credit information are individualized rather than collective." Ibid. (emphasis in original). The court thus concluded that Robins' "alleged violations of [his] statutory rights [were] sufficient to satisfy the injury-in-fact requirement of Article III." Id., at 413-414.
We granted certiorari. 575 U.S. ----, 135 S.Ct. 1892, 191 L.Ed.2d 762 (2015).
II
A
The Constitution confers limited authority on each branch of the Federal Government. It vests Congress with enumerated *1547 "legislative Powers," Art. I, § 1; it confers upon the President "[t]he executive Power," Art. II, § 1, cl. 1; and it endows the federal courts with "[t]he judicial Power of the United States," Art. III, § 1. In order to remain faithful to this tripartite structure, the power of the Federal Judiciary may not be permitted to intrude upon the powers given to the other branches. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006); Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
Although the Constitution does not fully explain what is meant by "[t]he judicial Power of the United States," Art. III, § 1, it does specify that this power extends only to "Cases" and "Controversies," Art. III, § 2. And " '[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.' " Raines v. Byrd, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997).
Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood. See id., at 820, 117 S.Ct. 2312. The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); Warth v. Seldin, 422 U.S. 490, 498-499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In this way, "[t]he law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches," Clapper v. Amnesty Int'l USA, 568 U.S. ----, ----, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013); Lujan, supra, at 576-577, 112 S.Ct. 2130and confines the federal courts to a properly judicial role, see Warth, supra, at 498, 95 S.Ct. 2197.
Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. Lujan, 504 U.S., at 560, 112 S.Ct. 2130. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Id., at 560-561, 112 S.Ct. 2130; Friends of the Earth, Inc., 528 U.S., at 180-181, 120 S.Ct. 693. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element. Warth, supra, at 518, 95 S.Ct. 2197.[6]
B
This case primarily concerns injury in fact, the "[f]irst and foremost" of standing's three elements. Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Injury in fact is a constitutional requirement, and "[i]t is settled that Congress *1548 cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Raines, supra, at 820, n. 3, 117 S.Ct. 2312; see Summers v. Earth Island Institute, 555 U.S. 488, 497, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)("In no event ... may Congress abrogate the Art. III minima").
To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S., at 560, 112 S.Ct. 2130(internal quotation marks omitted). We discuss the particularization and concreteness requirements below.
1
For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." Ibid., n. 1; see also, e.g., Cuno, supra, at 342, 126 S.Ct. 1854(" 'plaintiff must allege personal injury' "); Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)(" 'distinct' "); Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)("personal"); Valley Forge, supra, at 472, 102 S.Ct. 752(standing requires that the plaintiff " 'personally has suffered some actual or threatened injury' "); United States v. Richardson, 418 U.S. 166, 177, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974)(not "undifferentiated"); Public Citizen, Inc. v. National Hwy. Traffic Safety Admin., 489 F.3d 1279, 1292-1293 (C.A.D.C.2007)(collecting cases).[7]
Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be "concrete." Under the Ninth Circuit's analysis, however, that independent requirement was elided. As previously noted, the Ninth Circuit concluded that Robins' complaint alleges "concrete, de facto " injuries for essentially two reasons. 742 F.3d, at 413. First, the court noted that Robins "alleges that Spokeo violated his statutory rights, not just the statutory rights of other people." Ibid. Second, the court wrote that "Robins's personal interests in the handling of his credit information are individualized rather than collective ." Ibid . (emphasis added). Both of these observations concern particularization, not concreteness. We have made it clear time and time again that an injury in fact must be both concrete and particularized. See, e.g., Susan B. Anthony List v. Driehaus, 573 U.S. ----, ----, 134 S.Ct. 2334, 2341-2342, 189 L.Ed.2d 246 (2014); Summers, supra, at 493, 129 S.Ct. 1142; Sprint Communications Co. v. APCC Services, Inc., 554 U.S. 269, 274, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008); Massachusetts v. EPA, 549 U.S. 497, 517, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007).
A "concrete" injury must be "de facto "; that is, it must actually exist. See Black's Law Dictionary 479 (9th ed. 2009). When we have used the adjective "concrete," we have meant to convey the usual meaning of the term-"real," and not "abstract." Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967). Concreteness, therefore, is quite different from particularization.
*1549 2
"Concrete" is not, however, necessarily synonymous with "tangible." Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete. See, e.g., Pleasant Grove City v. Summum, 555 U.S. 460, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009)(free speech); Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993)(free exercise).
In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. See Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 775-777, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in Lujan that Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." 504 U.S., at 578, 112 S.Ct. 2130. Similarly, Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." Id., at 580, 112 S.Ct. 2130(opinion concurring in part and concurring in judgment).
Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III. See Summers, 555 U.S., at 496, 129 S.Ct. 1142("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing"); see also Lujan, supra, at 572, 112 S.Ct. 2130.
This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness. See, e.g., Clapper v. Amnesty Int'l USA, 568 U.S. ----, 133 S.Ct. 1138, 185 L.Ed.2d 264. For example, the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure. See, e.g., Restatement (First) of Torts §§ 569 (libel), 570(slander per se ) (1938). Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See Federal Election Comm'n v. Akins, 524 U.S. 11, 20-25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998)(confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); Public Citizen v. Department of Justice, 491 U.S. 440, 449, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989)(holding that two advocacy organizations'
*1550 failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").
In the context of this particular case, these general principles tell us two things: On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.[8]
Because the Ninth Circuit failed to fully appreciate the distinction between concreteness and particularization, its standing analysis was incomplete. It did not address the question framed by our discussion, namely, whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement. We take no position as to whether the Ninth Circuit's ultimate conclusion-that Robins adequately alleged an injury in fact-was correct.
* * *
The judgment of the Court of Appeals is vacated, and the case is remanded for proceedings consistent with this opinion.
It is so ordered.

The Act defines the term "consumer report" as:
"any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-
"(A) credit or insurance to be used primarily for personal, family, or household purposes;
"(B) employment purposes; or
"(C) any other purpose authorized under section 1681b of this title."
15 U.S.C. § 1681a(d)(1).

"The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." § 1681a(f).

This statutory provision uses the term "consumer," but that term is defined to mean "an individual." § 1681a(c).

For purposes of this opinion, we assume that Spokeo is a consumer reporting agency.

See Edwards v. First American Corp ., 610 F.3d 514 (C.A.9 2010), cert. granted sub nom. First American Financial Corp. v. Edwards, 564 U.S. 1018, 131 S.Ct. 3022, 180 L.Ed.2d 843 (2011), cert. dism'd as improvidently granted, 567 U.S. ----, 132 S.Ct. 2536, 183 L.Ed.2d 611 (2012)(per curiam ).

"That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.' " Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)(quoting Warth, 422 U.S., at 502, 95 S.Ct. 2197).

The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance. The victims' injuries from a mass tort, for example, are widely shared, to be sure, but each individual suffers a particularized harm.

We express no view about any other types of false information that may merit similar treatment. We leave that issue for the Ninth Circuit to consider on remand.