UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2015
_____

LEONARD COTTRELL; SANDRA HENON; WILLIAM REEVES; GEORGE
HERMAN; SIMON NAZZAL; CAROL FREBURGER; JACK LIGGETT; PATRICIA
BOUGH; MACK BROWN; DOLORES GILLESPIE; DEBORAH HARRINGTON;
ROBERT INGINO; EDWARD ROGERS, JR.; DEBORAH RUSIGNULOLO;
DOROTHY STOKES; JOSEPHINE TROCCOLI; HURIE WHITFIELD; THOMAS
LAYLOFF; CAROLYN TANNER; PATSY TATE; JOHN SUTTON; JESUS
RENTERIA; GLENDELIA FRANCO; NADINE LAMPKIN, on behalf of themselves
and all others similarly situated,

Appellants

v.

ALCON LABORATORIES; ALCON RESEARCH LTD; FALCON
PHARMACEUTICALS LTD; SANDOZ INC.; ALLERGAN INC, RP; ALLERGAN
USA INC; ALLERGAN SALES LLC; PFIZER INC; VALEANT
PHARMACEUTICALS INTERNATIONAL; BAUSCH & LOMB INC; ATON
PHARMA INC; MERCK & CO INC; MERCK SHARP & DOHME CORP; PRASCO
LLC; AKORN INC
_____

(D.C. Civil Action No. 14-cv-5859)
_____

SUR PETITION FOR REHEARING
_____


Present:  SMITH, Chief Judge, AMBRO, CHAGARES, JORDAN, SHWARTZ,
RESTREPO, and ROTH*, Circuit Judges**

---

* Judge Roth's vote is limited to panel rehearing only.
** Chief Judge Smith, Judge Ambro and Judge Jordan would grant rehearing en banc.

The petition for rehearing filed by Appellees in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court en banc, is denied.

By the Court,

s/ L. Felipe Restrepo
Circuit Judge

Date:          December 22, 2017
MB/cc:       All Counsel of Record

**No. 16-2015** *COTTRELL v. ALCON LABORATORIES*

**OPINION DISSENTING SUR DENIAL OF PETITION FOR REHEARING EN BANC**

SMITH, Chief Judge, with whom AMBRO and JORDAN, Circuit Judges, join.

Plaintiffs would prefer that the eye drops prescribed for them be sold in a different type of packaging. The wisdom of their preference, however, is better left tested in the marketplace, not in this Court. Creating a disparity with one of our sister circuits, the Majority's opinion reasons otherwise. Because I believe Plaintiffs' unfulfilled preferences do not constitute an "injury" that this Court can evaluate in light of Article III of the Constitution, I respectfully file this opinion dissenting sur denial of rehearing *en banc*.

## I.

Plaintiffs are consumers of prescription eye drop medications manufactured and distributed by Defendants. The medication is sold in bottles designed with dropper tips that dispense more liquid than the relevant portion of the human eye can hold at any one time. Since the entire amount of each drop cannot be contained within the eye—where it is pharmaceutically beneficial—the bottle's design necessarily results in a portion of each drop being wasted. Arguing that this waste constitutes an unfair or unconscionable practice under state consumer protection statutes, Plaintiffs filed a putative class action complaint.

Of course, Plaintiffs must have standing to bring their claim in federal court. To establish standing, Plaintiffs must show that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). The Majority notes that the case at hand "centers on the '[f]irst and foremost' of the three standing elements, injury in fact." Maj. Op. at 162 (quoting *Spokeo*, 136 S.Ct. at 1547).

To establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Ultimately holding that Plaintiffs successfully alleged an injury in fact sufficient to confer Article III standing, the Majority was first required to "acknowledge that the Seventh Circuit held otherwise in a recent case concerning materially identical allegations against many of the same defendants." *Cottrell v. Alcon Laboratories*, 874 F.3d 154, 165 (3rd Cir. 2017). In that case, the Seventh Circuit concluded that "[t]he fact that a seller does not sell the product that you want, or at the price you'd like to pay, is not an actionable injury." *Eike v. Allergan, Inc.*, 850 F.3d 315 (7th Cir. 2017). The Seventh Circuit instead characterized such a claim as merely expressing "regret or disappointment." *Id.* For reasons similar to those expressed by the Seventh Circuit in *Eike*, as well as those expressed by Judge Roth in her dissenting opinion in the case at hand, I would not hold Plaintiffs to have successfully established standing.

## II.

In her dissenting opinion, Judge Roth concludes that the Majority "ignores clear law cautioning against recognizing Article III standing based on the types of conjectural allegations" advanced by Plaintiffs. *Cottrell*, 874 F.3d at 172 (Roth, J, dissenting). One precedent that the Majority's approach conflicts with is *Finkelman v. National Football League*, 810 F.3d 187 (3d Cir. 2016). Like Judge Roth, I am of the opinion that *Finkelman* "all but decides this case." *Cottrell*, 874 F.3d at 172 (Roth, J, dissenting).

In *Finkelman*, this Court held that a plaintiff did not have standing to sue under the theory that the National Football League's (NFL's) ticketing policy artificially inflated the price of Super Bowl tickets. *Finkelman*, 810 F.3d 197. Like Plaintiffs in the case at hand, Finkelman brought a class action lawsuit arguing that he had suffered an economic harm. Specifically, Finkelman argued that if the NFL had offered more tickets to the general public—rather than "league insiders"—then Finkelman and other similarly situated individuals would have been able to purchase Super Bowl tickets at a lower

2

price. *Id.* This Court concluded that Finkelman's theory rested on "pure conjecture about what the ticket resale market might have looked like if the NFL had sold its tickets differently. Article III injuries require a firmer foundation." *Id.* at 201.

Similar to the theory presented in *Finkelman*, Plaintiffs' theory rests on "pure conjecture" as to what the eye drop market might have looked like if Defendants had sold their product in different packaging.[1] Attempting to distinguish its holding from *Finkelman*, the Majority notes that Plaintiffs' hypothetical marketplace only requires theorizing "the reduced size of the bottle dropper tip [a]s the *only* change from the status quo." *Cottrell*, 874 F.3d at 169 (emphasis in original). In attempting to distinguish this case from *Finkelman*, however, the Majority draws attention to the very reason why the two cases conflict. As Judge Roth writes, "contrary to the Majority's assertion, the [P]laintiffs' pricing theory does in fact depend on exactly the sort of presumption rejected by us and by other courts—namely, the presumption that no other aspects of the market would change once the defendants' conduct did." *Cottrell*, 874 F.3d at 173-74 (Roth, J, dissenting).

To put it differently, Plaintiffs' theory requires this Court to imagine a hypothetical marketplace in which Defendants are hamstrung from adapting to any new market conditions that might arise from the emergence of innovative bottle designs. This theory requires us to assume, for example, that a Defendant would decide to internalize the costs associated with designing, manufacturing, and marketing new packaging instead

---

[1] On remand, Finkelman amended his complaint to add detailed information describing how the secondary ticket market specifically functioned. In reviewing his amended complaint, this Court held Finkelman to only then have standing because the amended complaint did more than just allege higher prices—it "alleged a causal chain justifying *why*" ticket prices were higher. *Finkelman v. Nat'l Football League*, No. 16-4087, 2017 WL 6395503, at *5 (3d Cir. Dec. 15, 2017) (emphasis in original). Unlike the detailed information in Finkelman's amended complaint, Plaintiffs in the instant case provide only conclusory allegations to support their theory. Finkelman's amended complaint is therefore distinguishable from the instant case, and does not change the import of this Court's original holding in *Finkelman v. National Football League*, 810 F.3d 187 (3d Cir. 2016).

of raising the price it offers to consumers. Further, even if a Defendant were to internalize those costs, Plaintiffs' theory also requires us to assume that a Defendant would not charge more for a bottle capable of delivering more doses. It might just as easily be the case, however, that new packaging would result in Plaintiffs paying higher prices for their treatment. Therefore, to paraphrase *Finkelman*, "while it *might* be the case that the [Defendants' bottle design] increased . . . prices . . . it might *also* be the case that it had no effect on the . . . market." *Finkelman*, 810 F.3d 200 (emphasis in original). Similar to *Finkelman*, where this Court had "no way of knowing whether the NFL's withholding of tickets would have had the effect of increasing or decreasing prices," Plaintiffs' theory requires us to speculate as to the effects of new packaging. *Id.* Doing so conflicts with *Finkelman*, which made clear that "speculation is not enough to sustain Article III standing." *Id.*

## III.

I am also concerned that the Majority's opinion could encourage courts to ignore the expert conclusions of administrative agencies. As the Seventh Circuit wrote in *Eike*, "[t]he defendants' large eye drops have been approved by the Food and Drug Administration (FDA)—in other words have been determined to be safe and effective for treatment of glaucoma." *Eike*, 850 F.3d at 318. If Plaintiffs believe that smaller drops will be "even more effective, and also cheaper," these are matters that plaintiffs must take up with the FDA, since a court "cannot bypass the agency and make its own evaluation of the safety and efficacy of an unconventionally sized eye drop." *Id.* Although I would still not hold Plaintiffs to have shown standing even if Defendants did not have to submit new packaging designs to a lengthy FDA approval process, courts should hesitate before permitting plaintiffs to use the federal judiciary as a tool to second-guess factual decisions made by agencies that are presumed to be subject-matter experts.

## IV.

Finally, I am concerned that the Majority's opinion could play mischief with our standing jurisprudence beyond the class action field. By allowing plaintiffs to establish standing simply by speculating about the additional efficiencies they might have captured

4

had a defendant acted in accordance with the rules of a plaintiff's hypothetical marketplace, I fear that everyday business decisions may be subject to litigation by creative plaintiffs capable of theorizing a way that those business decisions could have been made to serve plaintiffs more efficiently. Perhaps as a way to preemptively limit its holding, the Majority repeatedly stresses that the case at hand involves consumer protection statutes prohibiting "unfair" or "unconscionable" conduct. *Cottrell*, 874 F.3d at 161, 165-67, 169-70. Although this language may signal the Majority's desire to restrict its holding to "unfairness" claims, I am concerned that the Majority provides no clear rationale to so confine its interpretation of Article III. I would hold that Article III limits this Court's ability to engage in the type of speculation that Plaintiffs' theory calls for regardless of whether a plaintiff roots its claim in unfairness, deception, or any other cause of action.

* * *

In light of the concerns cited above, I would join Judge Roth in holding that Plaintiffs have not established that they have standing to bring their claim in federal court.