NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 25 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JESUS JARAS, | No. 17-15201 |
| Plaintiff-Appellant, | D.C. No. 5:16-cv-03336-LHK |
| v. | |
| EQUIFAX INC., | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

| | |
|---|---|
| WILBUR GREEN, | No. 17-15987 |
| Plaintiff-Appellant, | D.C. No. 3:16-cv-05679-WHA |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC.; et al., | |
| Defendants-Appellees. | |

| | |
|---|---|
| HOWARD RYDOLPH, | No. 17-15990 |
| Plaintiff-Appellant, | D.C. No. 3:16-cv-05694-WHA |

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

v.

EXPERIAN INFORMATION
SOLUTIONS, INC.; et al.,

     Defendants-Appellees.

---

KIMBERLY CONTRERAS,

     Plaintiff-Appellant,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC.; et al.,

     Defendants-Appellees.

No.   17-15991

D.C. No. 3:16-cv-06315-WHA

---

SCOTT HUNTER,

     Plaintiff-Appellant,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC.; et al.,

     Defendants-Appellees.

No.   17-15992

D.C. No. 3:16-cv-06335-WHA

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted September 5, 2018
San Francisco, California

2

Before:  BERZON and FRIEDLAND, Circuit Judges, and DOMINGUEZ,** District Judge.

The Plaintiffs in these related cases—Wilbur Green, Howard Rydolph, Kimberly Contreras, Scott Hunt, and Jesus Jaras (collectively, "Plaintiffs")—filed for bankruptcy between 2011 and 2014 under Chapter 13 of the Bankruptcy Code. After the bankruptcy court confirmed their Chapter 13 plans, Plaintiffs requested their credit reports and noticed that some account information was being reported in a manner that they allege is inconsistent with the treatment of those claims in their confirmed bankruptcy plans.  Plaintiffs asked the three largest credit reporting agencies—Experian Information Solutions, Inc., Equifax, Inc., and Transunion, LLC—to update the information to match their confirmed bankruptcy plans.  But when Plaintiffs requested their credit reports again after allowing the credit reporting agencies adequate time to reinvestigate and update the information, they allege that several inaccuracies remained.

Plaintiffs subsequently sued credit reporting agencies and creditors providing the allegedly inaccurate information under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), and its California law counterpart, the California Consumer Credit Report Agencies Act ("CCRAA"),

---

** The Honorable Daniel R. Dominguez, United States District Judge for the District of Puerto Rico, sitting by designation.

3

Cal. Civ. Code § 1785.25(a), alleging that a confirmed Chapter 13 bankruptcy plan changes the legal status of prior debts, and that such changes must be reflected in the credit report in order for the report to be accurate and not misleading. The district courts granted Defendants' motions to dismiss or for judgment on the pleadings, holding that the challenged statements were not inaccurate so FCRA did not require changing them. On review, we affirm the dismissal of these complaints, but on the grounds that Plaintiffs—a group of individuals in bankruptcy who gave no indication that they had tried to engage in or were imminently planning to engage in any transactions for which the alleged misstatements in their credit reports made or would make any material difference—lack standing to pursue their claims.

In *Spokeo, Inc. v. Robins*, the Supreme Court held that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 136 S. Ct. 1540, 1549 (2016). Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* The Supreme Court offered a specific example to show that "not all inaccuracies cause harm or present any material risk of harm"—stating that "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* at 1550. The Court then remanded to our court to determine whether

the alleged FCRA violations "entail[ed] a degree of risk sufficient to meet the concreteness requirement." *Id.*

On remand, we accordingly considered whether the alleged FCRA violations—Spokeo's publication on the internet of a credit report that falsely stated the plaintiff's age, marital status, wealth, education level, and profession, in violation of 15 U.S.C. § 1681e(b)—were more material than a zip code error and thus amounted to a sufficiently concrete injury to support Article III standing. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1111 (9th Cir. 2017). The plaintiff alleged that the inaccuracies harmed his chances of making a favorable impression on prospective employers and that he was actively looking for a job. *Id.* at 1117. In holding that the plaintiff did have standing, we emphasized that the inaccuracies in the credit report at issue had already been requested and obtained by at least one third party, and that they were of a type likely enough to cause harm to his employment prospects at a time when he was unemployed and actively looking for work. *Id.* at 1116-17.

By contrast, Plaintiffs here do not make any allegations about how the alleged misstatements in their credit reports would affect any transaction they tried to enter or plan to try to enter—and it is not obvious that they would, given that Plaintiffs' bankruptcies themselves cause them to have lower credit scores with or without the alleged misstatements. They have therefore said nothing that would

5

distinguish the alleged misstatements here from the inaccurate zip code example discussed by the Supreme Court in *Spokeo*. Indeed, Plaintiffs have not alleged that they tried to enter any financial transaction for which their credit reports or scores were viewed at all, or that they plan to imminently do so, let alone that the alleged inaccuracies in their credit reports would make a difference to such a transaction. Unlike the plaintiff in *Spokeo*, Plaintiffs did not say anything about what kind of harm they were concerned about, other than making broad generalizations about how lower FICO scores can impact lending decisions generally—without any specific allegation that lower FICO scores impact lending decisions regarding individuals who are already in Chapter 13 bankruptcy. Without any allegation of the credit report harming Plaintiffs' ability to enter a transaction with a third party in the past or imminent future, Plaintiffs have failed to allege a concrete injury for standing.[1]

---

[1] The absence of allegations of an actual or imminent concrete harm also causes Plaintiffs' claims to be too amorphous to litigate. As the Supreme Court has explained:

> The gist of the question of standing is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends . . . [Standing] is demanded so that federal courts will not be asked to decide illdefined controversies over . . . issues . . . or a case which is of a hypothetical or abstract character.

*Flast v. Cohen*, 392 U.S. 83, 99-100 (1968) (citations and internal quotation marks omitted).

The absence of allegations that Plaintiffs have suffered or imminently will suffer a concrete injury compels dismissal of the Complaints in this case for lack of standing. *Spokeo*, 136 S. Ct. at 1547-48. But such dismissals should be without prejudice. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("Plaintiffs have not satisfied the requirements [for] . . . standing. In theory, Plaintiffs could allege . . . facts that might support standing. As a result, the complaint should have been dismissed *without* prejudice."); *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of . . . jurisdiction . . . must be without prejudice.").

AFFIRMED in part and VACATED in part. REMANDED with instructions to enter dismissals without prejudice.

*Jaras v. Equifax, Inc.*, No. 17-15201+

BERZON, Circuit Judge, partially dissenting:

I respectfully dissent from the majority's holding that Plaintiffs have not alleged a concrete injury sufficient to establish standing. The majority requires Plaintiffs to allege that the inaccuracies in their credit reports affected a specific previous or imminent transaction. No such requirement exists in our case law, nor should it.

To plead a concrete injury in a FCRA action for correction of an inaccurate credit report, individuals must allege that a violation of FCRA "actually harm[s], or present[s] a material risk of harm" to their concrete interests. *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017). Nearly all Plaintiffs state that inaccuracies in the reporting of their confirmed bankruptcy lowered their credit score.[1] Those allegations satisfy the concrete harm requirement.

Unlike an erroneous zip code, *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016), the alleged inaccuracies in Plaintiffs' credit reports harm or present a material risk of harm to their concrete interests. Credit reports exist to convey information to third parties and are used in a wide variety of transactions, from

---

[1] Because Plaintiff Jaras did not sufficiently allege that inaccuracies in his credit report adversely affected his creditworthiness, I concur with the majority that his complaint should be dismissed.

1

applying for a home loan to purchasing a cell phone.[2] In most instances, third

parties need not give notice before accessing an individual's credit report, 15

U.S.C. § 1681b(2)(A) (requiring notice only when requesting credit reports for

employment purposes); and in some instances, third parties can access credit

reports without the consumer taking any action to instigate a transaction—pre-

screening individuals for offers of credit or insurance, for example. *See* 15 U.S.C.

§ 1681b(c)(1)(B). It is thus often difficult to predict when a credit report may be

accessed or to know when it has been accessed, and inaccuracies that are

discovered may take up to 30 days to investigate and correct. *See* 15 U.S.C.

§ 1681i(a)(1)(A).

Given their "ubiquity and importance . . . in modern life—in employment

decisions, in loan applications, in home purchases, and much more—the real–

world implications of material inaccuracies in [credit] reports seem patent on their

face." *Robins*, 867 F.3d at 1114. That is because "[t]he threat to a consumer's

livelihood is caused by the very existence of inaccurate information in his credit

report and the likelihood that such information will be important to one of the

many entities who make use of such reports." *Id*.

---

[2] *See* Beth Braverman, *Getting a new cellphone? Expect a credit check*, Creditcards.com (Feb. 2, 2016), https://www.creditcards.com/credit-card-news/cellphone-credit-check-1270.php.

As a result, adverse information on a credit report, often resulting in a lower credit rating, constitutes a reputational injury creating a material risk of harm, whether or not an individual contemplates a specific, imminent transaction. Our decision on remand from the Supreme Court in *Robins v. Spokeo, Inc.* so recognizes, and does *not* demand an allegation of known access by a third party or of a past, or imminent, specific transaction. The plaintiff in *Robins* alleged only that a website's posting of inaccurate information about his personal life "caused actual harm to [his] employment prospects" because he was "actively seeking employment." First Amended Complaint at ¶¶ 34-35, *Robins*, 867 F.3d 1108. He did not state what specific transactions he was undertaking to look for employment, or whether any prospective employer had looked at the allegedly inaccurate reports.

Nonetheless, we held that he had alleged a sufficiently concrete injury to establish standing. *Id.* at 1118. We did not require the plaintiff to be more specific because we recognized that "determining whether any given inaccuracy in a credit report would help or harm an individual (or perhaps both) is not always easily done." *Id* at 1117. Moreover, we rejected the argument that Robins lacked standing because he had only "asserted that such inaccuracies *might* hurt his employment prospects, but not that they present a material or impending risk of doing so." *Id.* at

1118. We held that making available "a materially inaccurate consumer report" was injury enough. *Id.*

Plaintiffs' allegations in this case are just as specific and just as concrete as the ones we accepted in *Robins*. For that reason, I would hold that Plaintiffs have standing.

I note that establishing constitutional standing is separate from answering the substantive question, as required by FCRA, of whether Plaintiffs' credit reports are "patently incorrect, or . . . misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). The original dispute in this case—before the panel asked for supplemental briefing on the standing issue—was whether any error in those credit reports meets this standard, given that the Plaintiffs' pre-petition bankruptcy debts were not yet discharged and the Chapter 13 plans, even if accurately reported, might have the same consequences for future transactions as the current reporting method. In my view, that bankruptcy-focused issue is the one we should be addressing, as the plaintiffs do have standing. But as the majority does not address this substantive question, I do not either.

I respectfully dissent.