**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

<table>
<tr><td>

VERL A. BRANTNER, Estate of,

        Plaintiff-Appellee,

v.

OCWEN LOAN SERVICING LLC, a
Delaware limited liability company,

        Defendant-Appellant.

</td><td>

Nos.  18-35983
        19-35316

D.C. No. 2:17-cv-00582-TSZ

MEMORANDUM[*]

</td></tr>
</table>

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted March 6, 2020
Seattle, Washington

Before: IKUTA and R. NELSON, Circuit Judges, and OLIVER,[**] District Judge.

Ocwen Loan Servicing, LLC ("Ocwen") appeals a jury verdict holding it

liable to the Estate of Verl Brantner ("the Estate") for violations of the Washington

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Consumer Protection Act ("CPA"). We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

As a matter of law, Ocwen did not violate the three provisions of the Washington Consumer Loan Act ("CLA") on which the Estate based its per se CPA claim. *See Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 297 (Wash. 1997) (en banc). First, even assuming the Estate is a "borrower" for purposes of the CLA,[1] section 31.04.290(1)(c) of the Revised Code of Washington imposes duties on loan servicers who require borrowers to make payments (in addition to their loan payments) that are held in an escrow account, and then used by the loan servicer "for payment of insurance, taxes, and other charges with respect to the property." When read in context and according to its plain language, this provision is inapplicable to Ocwen's receipt of insurance proceeds from an insurer. *See Lake v. Woodcreek Homeowners Ass'n*, 243 P.3d 1283, 1288 (Wash. 2010) (en banc) (holding that statutory interpretation requires close adherence to the statute's plain meaning).

_____

[1] We reject Ocwen's argument that the Estate does not qualify as a "borrower" for purposes of the CLA and therefore lacks constitutional standing. Without deciding the statutory question, we conclude that the Estate adequately alleged that it suffered a concrete injury traceable to Ocwen's actions that would be redressed by a favorable decision. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Therefore, the Estate had constitutional standing to bring its per se CPA claim based on violations of the CLA.

2

Likewise, section 31.04.290(1)(e) of the Washington Code, which requires a loan servicer to "[p]romptly correct any errors and refund any fees assessed to the borrower resulting from the servicer's error[s]," is inapplicable to Ocwen's failure to make a timely insurance claim or to apply insurance proceeds to the balance of the loan expeditiously. In context, the statutory provision refers to corrections and refunds of fees imposed on the borrower, not to a loan servicer's mistakes in handling insurance policies it obtained to protect its collateral.

Finally, assuming without deciding that a violation of section 208-620-900(3)(c) of the Washington Administrative Code (the regulation implementing section 31.04.290(1)(b) of the Revised Code of Washington) could constitute a per se violation of the CPA, it also does not apply to Ocwen's conduct. In context, the regulation requires a loan servicer to notify the borrower if the loan servicer receives a payment *from the borrower* but does not credit it to the borrower's account, and instead places it in a suspense account. *See, e.g.*, RCW § 31.04.290(1)(b) (stating that this obligation applies to payments received "at the address where the borrower has been instructed to make payments," raising the inescapable inference that such payments are from the borrower). This duty does not apply to the loan servicer's receipt of insurance proceeds from an insurer.

3

Because the three provisions of the CLA that served as the basis for the Estate's per se CPA claim are inapplicable as a matter of law to Ocwen's handling of the insurance claim and proceeds, the district court erred in allowing the Estate's CPA claim to proceed to the jury on a per se theory. This error was not harmless. At trial, the Estate did not argue or present evidence showing that the public has an interest in the parties' dispute, which is necessary to satisfy the "public interest" element of a stand-alone CPA claim. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 537 (Wash. 1986) (en banc). Rather than present evidence showing a practice that "injured other persons" or "had the capacity to injure other persons," RCW § 19.86.093(3), the Estate sought to establish the public-interest element exclusively by proving that Ocwen violated the CLA, which per se satisfies the public-interest element. Thus, it is not "'more probable than not' that a properly instructed jury 'would have reached the same verdict'"—that Ocwen violated the CPA—if the district court had not allowed the Estate's per se theory to go forward. *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1194 (9th Cir. 2019) (quoting *Galdamez v. Potter*, 415 F.3d 1015, 1025 (9th Cir. 2005)). Accordingly, we must reverse and remand for a new trial so that a jury may determine whether Ocwen violated the CPA without reliance on a per se theory based on violations of the CLA.

4

Because we reverse the jury verdict, we also reverse the district court's award of attorneys' fees and its award of treble damages. RCW § 19.86.090.

**REVERSED AND REMANDED**.