NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 2 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BRETT ADAMS, | No. 20-35158 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-01005-TSZ |
| v. | |
| SKAGIT BONDED COLLECTORS, LLC, DBA SB&C Ltd., | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted November 17, 2020
Seattle, Washington

Before: GOULD and FRIEDLAND, Circuit Judges, and BOUGH,** District
Judge.

Plaintiff Brett Adams appeals the district court's order granting judgment on

the pleadings on his Fair Debt Collection Practices Act ("FDCPA") claims to

Defendant Skagit Bonded Collectors, LLC. Adams allegedly received debt

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Stephen R. Bough, United States District Judge for the
Western District of Missouri, sitting by designation.

collection letters from Skagit Bonded Collectors that failed to clearly identify his current creditor. Adams argues that these letters violated the FDCPA's affirmative disclosure requirement, 15 U.S.C. § 1692g(a)(2), and its prohibition on false or misleading representations, *id.* § 1692e. Adams alleges that he was harmed as a result because, "upon reading the letter, [he] was unsure of who the current creditor was."

We may not decide the merits of this case unless we have subject-matter jurisdiction, which requires the plaintiff have Article III standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95, 102-04 (1998). Although neither party initially raised the question of standing in their briefs on appeal, we must address jurisdictional issues sua sponte. *Wilson v. Lynch*, 835 F.3d 1083, 1090 n.2 (9th Cir. 2016). We therefore ordered supplemental briefing on whether Adams has Article III standing.

Article III standing consists of (1) an injury in fact (2) traceable to the challenged conduct of the defendant (3) that is likely to be redressed through a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (*Spokeo I*). An injury in fact must be both concrete and particularized. *Id.* at 1548. Because "Article III standing requires a concrete injury even in the context of a statutory violation . . . a bare procedural violation, divorced from any concrete

2

harm," does not confer standing upon a plaintiff.  *Id.* at 1549.[1]

We use a two-step approach to assess whether a statutory violation causes a concrete injury sufficient to satisfy Article III.  *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019).  "We ask '(1) whether the statutory provisions at issue were established to protect the plaintiff's concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'"  *Id.* at 1270-71 (alteration omitted) (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)).

1.  To identify the interests protected by the FDCPA, we examine "[h]istorical practice" and the "legislative judgment" underlying the provisions at issue.  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020).  The closest common-law analogue to Adams's claims is fraud.  At common law, actions for fraud—including fraudulent concealment and nondisclosure—required proof of reliance and resulting pecuniary loss.  *See, e.g.*, Restatement (Second) of Torts §§ 525, 537, 550-552 (Am. L. Inst. 1977).  Similarly, congressional

---

[1]  Some of our prior cases have held that a plaintiff alleges a cognizable injury in fact merely by alleging a violation of the FDCPA.  *See Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1114-16 (9th Cir. 2014); *see also Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).  The analysis in those cases is "clearly irreconcilable" with *Spokeo I* and has been abrogated.  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

judgment suggests a concern with "genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response" to a debt collector's communication. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010). Statements that induce no reliance do not impede a consumer's ability to intelligently respond to a debt collector. Because not every misleading statement in a debt collection letter necessarily threatens the recipient's concrete interests, we consider the alleged violation here more procedural than substantive. *Campbell*, 951 F.3d at 1119 n.8 (explaining that "*procedural* obligations . . . *sometimes* protect individual interests," while the violation of "a *substantive* right" always causes concrete harm (citation omitted)).[2]

2. Adams has not alleged actual harm or a material risk of harm to the interests protected by the FDCPA. Nothing in the Complaint suggests he took or forewent any action because of the allegedly misleading statements in the letters.

---

[2] We reject Adams's theory that he has alleged an informational injury that should be treated as substantive. When a plaintiff has a statutory right to information, being deprived of that information can constitute a concrete injury in fact. *Spokeo I*, 136 S. Ct. at 1549-50 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998); *Pub. Citizen v. Dep't of Just.*, 491 U.S. 440, 449 (1989)). But the doctrine of informational injury does not apply here. The FDCPA protects a consumer's right to "understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). "Even though these rights necessarily involve the dissemination of information, they are not thereby *tantamount* to a right to information per se." *Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251, 1259 (9th Cir. 2010). We therefore decline to extend the doctrine of informational injury to the violations alleged.

4

Rather, the Complaint includes a bare allegation of confusion. Without more, confusion does not constitute an actual harm to Adams's concrete interests. *Cf. Syed v. M-I, LLC*, 853 F.3d 492, 499-500 (9th Cir. 2017) (holding that a plaintiff had standing under the Fair Credit Reporting Act when the court could "fairly infer" that his alleged confusion caused him to sign a liability waiver he otherwise would not have). Nor do Adams's allegations suggest a material risk of harm to his interests. Although his supplemental brief offers a series of examples in which a hypothetical consumer might detrimentally rely on an allegedly misleading creditor identification, the Complaint does not support an inference that *Adams himself* was ever at risk of detrimental reliance. Because the argument that he might have relied on the allegedly misleading statements to his detriment is entirely "'conjectural' or 'hypothetical'" without additional factual allegations, Adams has not adequately pleaded a material risk of injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). He therefore lacks Article III standing.

We vacate the judgment on the pleadings and remand with instructions to dismiss without prejudice for lack of jurisdiction. *See Hampton v. Pac. Inv. Mgmt. Co.*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice.").

**VACATED AND REMANDED WITH INSTRUCTIONS.**