NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0428n.06

No. 20-2060

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MARK R. KRUEGER,

  Plaintiff-Appellant,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.;
TRANS UNION LLC,

  Defendants,

CENLAR FSB,

  Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Sep 13, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE U.S.
DISTRICT COURT FOR THE
EASTERN DISTRICT OF
MICHIGAN

Before: GIBBONS, KETHLEDGE, and MURPHY, Circuit Judges.

KETHLEDGE, Circuit Judge. For more than a year, the servicer for Mark Krueger's mortgage loan, Cenlar FSB, continued to tell credit-reporting agencies that the loan was past due—even though Cenlar knew that the loan had been discharged in bankruptcy. Krueger's credit score hovered in the low 500s as a result. After unsuccessfully seeking for months to have Cenlar correct its reports, Krueger brought this suit under the Fair Credit Reporting Act, alleging that Cenlar had negligently and willfully breached its duties under the Act. The district court granted summary judgment to Cenlar, holding that Krueger lacked standing to assert his negligence claim and that he lacked evidence that Cenlar violated the Act willfully. We respectfully disagree and reverse.

I.

Given that the district court granted summary judgment to Cenlar, we construe the factual record in the light most favorable to Krueger. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009).

Krueger filed for bankruptcy under Chapter 13 and eventually made all the payments required under his plan. In January 2018, the bankruptcy court entered an order discharging his remaining debts, including a mortgage loan on a property at 9405 Pardee Road. The servicer for the mortgage on that property was Cenlar.

After the discharge, Krueger looked forward to replacing his older, beat-up car with a new one. A month after the discharge, however, an online credit-monitoring app told Krueger that one of his accounts was past due. Krueger pulled his credit reports from Experian, Equifax, and TransUnion. Those reports said that Krueger owed $29,453 on the Cenlar loan, that $10,875 of the loan was past due, and that his credit score was 515—much lower than Krueger had expected, even with his recent bankruptcy.

Given that credit score, Krueger abandoned his plan to buy a new car and instead disputed his credit report. The credit-reporting agencies forwarded Krueger's disputes to Cenlar. At the time, Cenlar already knew that the bankruptcy court had discharged the mortgage loan; indeed Cenlar was in the process of stripping the lien from Krueger's property. In response to the dispute, Cenlar's credit analysts likewise noted that the bankruptcy court had discharged the debt— meaning, as Cenlar's representative admitted later, that Krueger "did not owe" anything on the loan and that his account was not past due. Yet when Cenlar purportedly sought to correct the mistaken report, it said the account had "no status"—which, according to Cenlar, meant that the

account's status had not changed from the month before. Cenlar also said that the account balance had increased to $31,783 and that the amount past due had increased to $11,191.

When Krueger next checked his reports, Experian and TransUnion still said that the Cenlar loan was past due. Over the following months, Krueger continued to dispute his credit reports, and Cenlar continued to say the same thing—that the account had "no status" and a past-due balance. In February 2019, more than a year after the discharge, Cenlar was still reporting that the loan was past due—now by $12,294.

Krueger sued Cenlar that month, alleging that it had willfully and negligently violated its statutory duties as a "furnisher" of credit information. *See* 15 U.S.C. §§ 1681s-2, 1681n, 1681o. Cenlar and Krueger cross-moved for summary judgment on those claims. The district court held that a reasonable jury could not find that Cenlar had violated the Act willfully and that Krueger lacked standing to bring a claim that Cenlar had violated the Act negligently. The court therefore granted summary judgment to Cenlar. This appeal followed.

## II.

We review the district court's grant of summary judgment de novo. *See Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 310 (6th Cir. 2010). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

Krueger challenges the district court's conclusion that he lacked standing. A plaintiff has standing if he suffered an injury in fact, fairly traceable to the defendant's alleged misconduct, which the relief he seeks would likely redress. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Here, Krueger seeks damages under the Fair Credit Reporting Act, which gives him a cause of action against a furnisher of credit information (like Cenlar) who willfully or negligently violated its procedural duties under the Act. *See* 15 U.S.C. §§ 1681n, 1681o. But not every violation of the Act causes an injury in fact. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Instead, a plaintiff has standing to seek damages only if he can show that the defendant's alleged procedural violation—here, Cenlar's inaccurate reports about the mortgage loan's status—caused him to suffer a concrete harm. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021).

Krueger argues that Cenlar's inaccurate reports inflicted a concrete harm because his low credit score caused him to abandon his plans to buy a new car. When the bankruptcy court discharged his debts, Krueger had been driving an older car for years, using his available funds to pay off his debts. A loan would have allowed him to replace his old car, with the added benefit of giving him a chance to rebuild his credit. But when Krueger saw his dismal credit score he chose not to apply for a loan, since a lower credit score meant that lenders would charge him a higher interest rate. The harm that resulted from Krueger's forbearance was "not abstract." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted). To the contrary, for about 18 months after Krueger's debts were discharged, instead of driving a new Ford F-150, he drove a Ford Fusion that was not "always in the best of shape." And the record here supports a finding that this harm was real, rather than fictive: once the credit-reporting agencies removed the Cenlar account from Krueger's report, his credit score increased by almost 100 points and he promptly obtained a car loan to buy a new F-150.

Cenlar does argue that, since Krueger himself chose not to apply for a car loan, he cannot trace this harm to Cenlar's conduct—as opposed to the bankruptcy or to himself. But a plaintiff's role in his injury destroys traceability only when the injury is "so completely due to the plaintiff's

own fault as to break the causal chain." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020) (alterations adopted). Here, when Cenlar reported that the loan was past due, Krueger's resulting credit score was only 515. That Krueger chose not to obtain a loan with higher interest than he could have obtained absent Cenlar's error does not make him at "fault" for the harm of driving his old car. Krueger has standing to assert his claims here.

B.

Krueger argues that his evidence would allow a reasonable jury to find that Cenlar had willfully and negligently violated the Act. To prevail on those claims, Krueger must show three things. First, Krueger must make "a threshold showing" that Cenlar provided false or "materially misleading" information to the credit-reporting agencies. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 629–30 (6th Cir. 2018). Krueger plainly made that showing: long after his mortgage loan was discharged, Cenlar continued to report it as past due. Cenlar responds that its report was not materially misleading because Cenlar also said that the account had "no status" and because Experian's credit report elsewhere noted Krueger's bankruptcy. The relevant inquiry, however, is whether Cenlar's information was misleading, not whether Experian's report as a whole was. *See id*. And Cenlar's failure to indicate that the debt had been discharged could mislead a person to believe that Krueger remained liable for the loan. Indeed, Krueger presented evidence that the credit reporting agencies actually construed Cenlar's responses that way: when the agencies removed the Cenlar account from his report, his credit score increased by 100 points. Thus, a reasonable jury could find that Cenlar furnished false or materially misleading credit information about Krueger.

Second, a reasonable jury must be able to find that Cenlar breached its duties under the Act. *See* 15 U.S.C. §§ 1681n(a), 1681o(a); *Pittman*, 901 F.3d at 628. As relevant here, the Act

required Cenlar reasonably to investigate Krueger's dispute and to correct any inaccurate or incomplete information that Cenlar had furnished. *See* 15 U.S.C. § 1681s-2(b)(1)(A), (E); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616, 618 (6th Cir. 2012). The record would allow a jury to find that Cenlar breached that duty. Krueger repeatedly told Cenlar that his loan had been discharged in bankruptcy and that, as a result, he did not owe anything on the loan. Cenlar's credit analysts also saw that the loan had been discharged. And Cenlar's representative admitted in his deposition that the discharge meant that Krueger owed nothing on the loan. Yet Cenlar continued to report that Krueger owed a balance on the loan and that the loan was past due. From that evidence a jury could plainly find that Cenlar botched its investigation and failed to correct its mistaken reporting.

The same evidence supports the third element of Krueger's claims, namely that Cenlar acted negligently or willfully. *See* 15 U.S.C. §§ 1681n(a), 1681o(a). Again, Cenlar knew that Krueger's loan had been discharged but for more than a year told the credit-reporting agencies that the loan was past due. A jury could therefore find that Cenlar was either incompetent or willful in its failure to correct its reports sooner. Cenlar contends that its actions were not willful because it had implemented policies that guided its analysts in the resolution of credit disputes. But the mere existence of those policies hardly disproves as a matter of law that Cenlar acted willfully. *See Boggio*, 696 F.3d at 619. Cenlar was not entitled to summary judgment on Krueger's claims.

\* \* \*

The district court's judgment is reversed, and Krueger's case is remanded for further proceedings consistent with this opinion.