**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RYAN SIX, | No. 23-15887 |
| *Plaintiff-Appellant*, | D.C. No. 2:22-cv-00203-MTL |
| v. | |
| IQ DATA INTERNATIONAL, INC., | OPINION |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Argued and Submitted May 17, 2024
Phoenix, Arizona

Filed February 24, 2025

Before: Susan P. Graber, Roopali H. Desai, and Ana de Alba, Circuit Judges.

Opinion by Judge Desai

# SUMMARY[*]

## Fair Debt Collection Practices Act

Reversing the district court's dismissal for lack of subject matter jurisdiction of an action under the Fair Debt Collection Practices Act, and remanding for further proceedings, the panel held that the plaintiff had Article III standing to bring his claim under 15 U.S.C. § 1692c(a)(2), which prohibits a debt collector from directly communicating with a consumer in connection with the collection of any debt when the collector knows that the consumer is represented by an attorney.

The panel held that an individual who receives a letter in violation of § 1692c(a)(2) has constitutional standing to bring a claim. The panel concluded that both Congress's judgment in enacting the Fair Debt Collection Practices Act and a comparison to traditionally recognized harms established that the plaintiff suffered a concrete injury when the defendant sent him a letter. Furthermore, the plaintiff's harm was both particularized and actual. Because receipt of the letter in alleged violation of § 1692c(a)(2) inherently violated the plaintiff's privacy, he sufficiently alleged actual harm, rather than a conjectural harm or bare procedural violation. And there was no dispute that the remaining elements of standing were met because there was a causal connection between the injury and the conduct complained of, and the relief sought would redress the intrusion.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel addressed additional issues in a separately filed memorandum disposition.

## COUNSEL

Russell S. Thompson IV (argued), Thompson Consumer Law Group PC, Scottsdale, Arizona, for Plaintiff-Appellant.

Erin M. McManis (argued), Ember A. Van Vranken (argued), and Joshua M. Bolen, Carpenter Hazlewood Delgado & Bolen LLP, Tempe, Arizona, for Defendant-Appellee.

## OPINION

DESAI, Circuit Judge:

The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collectors from engaging in certain practices, including directly communicating with a consumer in connection with the collection of any debt when the collector knows that the consumer is represented by an attorney. *See* 15 U.S.C. § 1692c(a)(2). Ryan Six brought a claim against IQ Data International, Inc. ("IQ") under § 1692c(a)(2), alleging that IQ sent him a debt verification letter after he notified the company that all communications should be sent to his attorney. The district court dismissed Six's action for lack of jurisdiction, ruling that he lacked Article III standing. On appeal, Six challenges the district court's dismissal for lack of jurisdiction, as well as its denial of his motion to strike affirmative defenses, its resolution of the parties' joint

discovery dispute based on attorney-client privilege, and its modified grant of attorneys' fees. We hold that an individual who receives a letter in violation of § 1692c(a)(2) has standing to bring a claim, and thus reverse the district court's dismissal for lack of jurisdiction and remand for further proceedings.[1] In light of our ruling, we need not, and do not, reach Six's claim for the denial of his motion to strike affirmative defenses.[2]

## BACKGROUND

IQ acquired a debt obligation for Six's purported breach of a residential lease. Six learned of the debt and, on August 18, 2021, mailed a letter to Equifax disputing the debt and requesting documentation of it. The same day, Six's counsel mailed a letter directly to IQ providing notice that Six was represented and that all correspondence should be sent to counsel.

On September 2, 2021, IQ received Six's dispute letter and submitted an internal request to generate and send the requested documentation to Six's mailing address. The next day, September 3, IQ updated its records to show that it had processed Six's counsel's letter and that direct communication should cease. But on that same day, IQ also sent the letter with verification of the debt to Six's mailing address.

---

[1] In a separately filed memorandum disposition, we affirm the district court's resolution of the parties' joint discovery dispute and the court's modified grant of attorneys' fees.

[2] The parties may litigate the affirmative defenses on remand. And in any event, Six is not precluded from appealing the district court's denial of his motion to strike in a future appeal.

After receiving the letter, Six sued IQ in the District of Arizona under 15 U.S.C. § 1692c(a)(2). Six and IQ filed cross-motions for summary judgment. The district court dismissed the action for lack of jurisdiction. It ruled that Six lacked Article III standing because he could not show that he had suffered an injury in fact. The district court reasoned that the receipt of one unwanted letter was neither akin to the traditional types of harm providing a basis for a lawsuit, nor was it the type of abusive debt collection practice that the FDCPA was intended to prevent. The district court did not reach the other arguments in the parties' cross-motions for summary judgment and, instead, denied the remainder of the motions for summary judgment as moot.

## STANDARD OF REVIEW

We review de novo whether a plaintiff has standing. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018).

## ANALYSIS

Six claims that he has standing because he received an unwanted letter from IQ after notifying IQ that all correspondence should be sent to his attorney, resulting in an invasion of his privacy interests. IQ claims that Six's alleged harm is insufficient to establish standing because it is not analogous to the types of harm traditionally recognized by American courts. To determine whether Six had standing to bring his claim, we consider whether he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

An "injury in fact" is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (cleaned up) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To determine whether there is a concrete injury, we consider two factors: (1) Congress's judgment and (2) a comparison of the alleged harm to harms traditionally recognized by American courts. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425–26 (2021). Tangible harms, like physical or monetary loss, readily qualify as concrete injuries, but "[v]arious intangible harms can also be concrete." *Id.* at 425. A harm is particularized if it affects the plaintiff "in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).

We first turn to Congress's judgment, which can be "instructive" in determining whether there is a concrete injury "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* at 341. Accordingly, we "must afford due respect to Congress's decision to . . . grant a plaintiff a cause of action to sue over the defendant's violation of [a] statutory prohibition . . . In that way, Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate [at] law.'" *TransUnion*, 594 U.S. at 425 (quoting *Spokeo*, 578 U.S. at 341). But the existence of a statutory cause of action does not automatically create standing, and this court must decide independently whether a concrete injury exists in the context of the statutory violation. *See id.* at 426.

When Congress enacted the FDCPA, it recognized that "[a]busive debt collection practices contribute to . . . invasions of individual privacy." 15 U.S.C. § 1692(a). And with that knowledge, Congress expressly prohibited

debt collectors from communicating directly with consumers who the collectors know are represented by counsel. *Id.* § 1692c(a)(2); *see Ward v. NPAS, Inc.*, 63 F.4th 576, 581 (6th Cir. 2023) (finding that § 1692c(c) protects consumer privacy). It follows, therefore, that receipt of a letter from a debt collection agency is the type of infringement on privacy interests that Congress contemplated when it enacted the FDCPA. Congress's judgment thus supports Six's claim that he suffered a concrete injury in the context of the statute and has standing to sue.

Next, we assess whether Six has "identified a close historical or common-law analogue for [his] asserted injury." *TransUnion*, 594 U.S. at 424. The analogue to the alleged injury must be a harm that is "traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* (cleaned up). Intrusion upon seclusion, which protects the right of privacy, is one such example. *Id.* at 425; *see Van Patten*, 847 F.3d at 1043 ("Actions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states."). Furthermore, the alleged harm need not be "an exact duplicate" of a traditionally recognized harm to be analogous. *TransUnion*, 594 U.S. at 424. A close analogue exists when the alleged and traditionally recognized harm are similar in "kind" rather than "degree." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (citing *Spokeo*, 578 U.S. at 340–42).

Courts have consistently found that the harm caused by unwanted communications bears a close relationship to intrusion upon seclusion. *See, e.g.*, *Van Patten*, 847 F.3d at 1040–41, 1043 (holding two unwanted text messages in

violation of the Telephone Consumer Protection Act ("TCPA") was a concrete injury); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1117–18 (9th Cir. 2022) (affirming *Van Patten* post-*TransUnion*); *Gadelhak*, 950 F.3d at 463; *Dickson v. Direct Energy, LP*, 69 F.4th 338, 348–49 (6th Cir. 2023) (holding that one silently delivered voicemail in violation of the TCPA was a concrete injury); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191–93 (10th Cir. 2021) (holding that an unwanted call and voicemail in violation of the FDCPA was a concrete injury). In *Ward*, for example, a debt collector called the plaintiff one time after the plaintiff's lawyer attempted to send a cease-and-desist letter to the collector. 63 F.4th at 579. The plaintiff sued under § 1692c(a)(2), and the Sixth Circuit found that the kind of harm caused by the unwanted call was closely related to intrusion upon seclusion. *Id.* at 580–82. We see no meaningful difference in this context between making a phone call and sending a letter.

When Six notified IQ that it should communicate only with his counsel, he clearly expressed a desire to be undisturbed by IQ's communications. And by sending a letter after receiving Six's notification, IQ created the kind of "irritating intrusion[]" addressed by intrusion upon seclusion. *Gadelhak*, 950 F.3d at 462. As other courts have held, the fact that IQ sent only one letter does not change the *kind* of harm caused. *See Lupia*, 8 F.4th at 1192 (holding that a single phone call poses the same kind of harm as intrusion upon seclusion, although it may not be sufficient to establish liability). Accordingly, the harm alleged by Six poses "the same *kind* of harm recognized at common law—an unwanted intrusion into . . . plaintiff's peace and quiet," *id.*, and the harm caused by an unwanted letter, in violation of

§ 1692c(a)(2), is analogous to the harm caused by intrusion upon seclusion.

IQ relies on the Seventh Circuit's decision in *Pucillo v. National Credit Systems, Inc.*, 66 F.4th 634 (7th Cir. 2023), to distinguish the kind of harm caused by unwanted letters from that caused by other types of unwanted communications. In *Pucillo*, the plaintiff sued a debt collector under the FDCPA for sending him two letters regarding a debt that had been discharged in bankruptcy. *Id.* at 636. The court ultimately concluded that the two letters Pucillo received were "too far afield from the traditional tort of intrusion upon seclusion" to establish a concrete injury. *Id.* at 641. In reaching its conclusion, the court explained that the harm caused by the letters differed from that caused by unwanted text messages:

> Text messages may create an injury because they can disrupt a person at anytime, anywhere, thereby invading private solitude . . . In contrast, postal mail is delivered to a mailbox without interrupting the recipient's seclusion. Mail can be picked up when, if, and how often the recipient chooses, unlike a phone which is usually on one's person or close by throughout the day. While receiving a letter can be an irritation, we do not see an actionable analogy between a letter delivered to a mailbox and automated text messages delivered to one's cell phone.

*Id.* (cleaned up).

We are unpersuaded by this distinction. The line drawn by *Pucillo* rests on the *degree* of harm, rather than the *kind*

of harm, and the Supreme Court has counseled against this approach. *See Gadelhak*, 950 F.3d at 462 ("But when *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a 'close relationship' in kind, not degree."); *Pucillo*, 66 F.4th at 644–45 (Lee, J., dissenting) (noting that the majority opinion's standing analysis erred by focusing on the number of letters received and degree of intrusion caused by mail). Indeed, the *Pucillo* court acknowledged that its analysis hinged on degree rather than kind, commenting that it reserved ruling on "other kinds of mailings [that] could impact seclusion more significantly." *Pucillo*, 66 F.4th at 640 n.3. Furthermore, taking *Pucillo*'s distinction to its logical extreme demonstrates that its line-drawing is misguided. Even a consumer who receives hundreds of unwanted letters could not establish a harm analogous to intrusion upon seclusion simply because the letters could be picked up at the recipient's choosing. This cannot be the case. Regardless of when it is picked up, an unwanted letter intrudes on the recipient's privacy and, thus, we are unpersuaded by *Pucillo*.[3]

In sum, both Congress's judgment and a comparison to traditionally recognized harms establish that Six suffered a concrete injury when IQ sent him a letter. Furthermore, Six's harm is both particularized and actual. IQ's letter was delivered directly to Six, which affected him in a "personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). And because receipt of the letter

---

[3] Similarly, the factual assumption underpinning *Pucillo*'s analysis is not necessarily true:  Nothing compels a person to look at text messages at unwanted times of the day.  Just as "[m]ail can be picked up when, if, and how often the recipient chooses," *Pucillo*, 66 F.4th at 641, so too can text messages be viewed when, if, and how often the recipient chooses.

in alleged violation of § 1692c(a)(2) inherently violated Six's privacy, he has sufficiently alleged actual harm, rather than a "conjectural" harm or "bare procedural violation." *Compare Spokeo*, 578 U.S. at 342 (noting that a formatting error in violation of the Fair Credit Reporting Act may not result in actual harm), *with Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 988 n.5, 991 (9th Cir. 2023) (finding that a violation of TCPA § 227(c) for texting a phone number on the Do-Not-Call Registry established actual harm because an unsolicited text is inherently an invasion of privacy). Thus, Six suffered an injury in fact sufficient to establish standing at this juncture of the case.

We also conclude that the remaining elements of standing are met, a conclusion that IQ does not dispute. There is a "causal connection between the injury and the conduct complained of," *Lujan*, 504 U.S. at 560, because it was IQ's letter itself that caused the intrusion on Six's privacy, s*ee id.* (explaining that traceability requires a connection between the injury and defendant's alleged violation, rather than third-party action). And the relief sought under the FDCPA, including declaratory relief, statutory damages, and actual damages, would redress the intrusion. *Robey v. Shapiro, Marianos, & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (8th Cir. 2006). In sum, the district court improperly dismissed the action for lack of jurisdiction.

Six argues that we should grant summary judgment in his favor if we hold that he has standing, but IQ argues that remand is appropriate if we reverse the district court's dismissal for lack of jurisdiction. The district court is best positioned to rule on the parties' alternative arguments for summary judgment in the first instance, and thus we agree with IQ's suggestion to remand for further proceedings

consistent with our rulings.[4] *See EB Holdings II, Inc. v. Ill. Nat'l Ins. Co.*, 108 F.4th 1211, 1225 (9th Cir. 2024) (declining to reach alternative arguments for summary judgment in the first instance).

**REVERSED AND REMANDED.**

---

[4] We do not consider the merits of Six's claim against IQ, and our holding does not foreclose the availability of the bona fide mistake defense on remand. Indeed, the minimal amount of time between IQ's processing of the letter from Six's attorney's and IQ's mailing of the disputed letter, coupled with the fact that Six asked IQ for information to be sent to him, raises serious questions about IQ's liability.